My understanding is that everyone is here and ready. So Mr. Mullen, am I pronouncing your name correctly? Mullen. Mullen. Okay. And you have reserved three minutes. Is that correct, sir? Yes, John. Okay. Give us just a second to get settled. Sure. Okay. Good? Okay. You may begin. Thank you. May it please the Court. There were a myriad of procedural and substantive errors committed by the district court when it improperly dismissed plaintiff's first party breach of contract insurance complaint in connection with a pre-motion, I'm sorry, a pre-answer motion to dismiss on the basis of late notice. The initial procedural infirmity starts with what the court actually considered as part of the motion to dismiss filed by the defendant. Not only did the court consider the policy of insurance. Why is the policy not integral? Oh, it is. And we haven't argued that the policy wasn't integral. We have no issue with the court using the policy, interpreting the policy. It's the other documents that we have an issue with. That would include the defendant's expert reports, photographs, a reference to a report that came from one of the plaintiff's experts. In those instances where there is no incorporation by reference, and in those instances where clearly this is not integral to the plaintiff's complaint going forward on a simple breach of contract case, the Second Circuit is very clear. Well, there are a few dates in the complaint. Is that correct? In terms of? Right. I mean, we know what day. The water backup occurred in February of 2022. We know what day you guys hired the contractor. In March of 2022. We know what day the pipes collapsed and overflowed. April of 2022. Right. So why are those dates not enough to answer the question before us? Well, in part, in terms, again, we're dealing with a motion to dismiss. So one of the things that the district court said very clearly, and that's why this is important, because the district court should have converted this to a motion for summary judgment if that was the direction she wanted. Did you object to the district court's consideration of the expert report below? I'm sorry? Did you object to the district court's consideration of the expert report below? Did you ask that the motion be converted into a summary judgment motion? No, we did not. And so why isn't that argument waived? Well, the case law indicates that such an argument would not automatically be waived if there was a reasonable basis and justice would be supported. Did you not quote from the report in your papers below? So not with respect to the issue of late notice. Did you quote from the expert's report in your papers below? We referenced it in relationship to an argument that was not decided by law. So not only did you not object, you also specifically referred to the content of the expert report below. Why isn't that waiver? We commented that that expert report, even if believed, didn't support the exclusion arguments that they made, but it had nothing to do with late notice. What becomes important here is the district court, in rendering its decision, said that the plaintiff failed to provide a reasonable explanation as it relates to an excuse. By saying that, the district court basically injected a pleading requirement into Rule 8 by, in essence, suggesting that the plaintiff in a complaint… …that the flooding was in February, that in March they hired a contractor to investigate, correct? Correct. And by April, they even hired a second contractor to repair. Correct. Why did – doesn't that show that they knew, at least by April 2022, that there was a loss? No. They knew of something, but what the loss was – But they knew enough to hire a second contractor to repair it, right? Well, keep in mind, the initial contractor is able to detect, based on a camera, that the drywall was collapsed. The second contractor has to come in to excavate to see exactly what was involved in the first place. It was only after that report. Go ahead and finish. Go ahead and finish your talk. It was only – I'm sorry. No, go ahead and finish your talk. I was just saying, it was only after that report that the insurer then turned around and gave notice to the caretaker. The problem is that by that time, the condition itself had been, in some ways, rectified or altered, hadn't it? So it's true that a repair had been made, but there's a – Having owned a home once upon a time for 40-plus years, when you have a loss, what's the first thing you do? You call the insurance company to see if there's coverage. And the problem that's apparent to some degree is that in the denial of coverage to you, the problem is that there's no way to determine what the cause of the loss was. Well, if we – That's not what the reasonable notice is about, is it? If we look at the denial letter, the ironic thing is the denial letter doesn't even cite late notice as a basis for denial. Doesn't cite what? Doesn't cite late notice as a basis for denial. Well, this is what it does say. This is at 176. H2M was unable to identify the cause of the pipes collapse because the pipes had been repaired prior to H2M's involvement and based on lack of information provided by the contractor. Right. So at that point, the carrier would have – So who's now in control of the loss and its causation? Yes, 100 percent. But that doesn't mean that there was any type of substantive or material damage or injury that was suffered. What's the nature of a reasonable notice of loss from the insurance company's perspective in terms of New York law? I mean, I'll give you the Mighty Midgets and the cases that kind of work out from Mighty Midgets and the law in New York is that it's not just – it's not a seat-in-the-pants kind of thing. To some degree, it's an examination of the type of loss and whether one – knowing what causes the loss and appreciating what the loss is may take some time to appreciate that. But this seems kind of beyond the outer limits of that, doesn't it? Well, let me just focus the court on the three cases that we cited because I believe that losses – different losses require different analysis. Okay. And these are cases where the damage is hidden. They had damages like – that was, in fact, the situation in Aquist, the situation in Montefiore, and the situation in T-Tex, three cases that we cited, where the loss was some – anywhere between four months and a year after notice was given. And the court denied – How long did it take – how long did it take for the owners to discover the nature of the loss? They were doing investigations in each of those instances. Well, they knew after they'd hired Sesspool, didn't they? Sorry? Didn't they know the nature of the loss after they hired Sesspool? No. I mean, they knew that after they hired Sesspool, they knew that there was a crack in the drywall. I'm sorry. They knew that the drywall had collapsed. That's what they knew. They knew in March of 2022 that Sesspool had started to investigate and inspect underground pipes because it was not apparent what had caused the flood, correct? That's your complaint in paragraph 20, right? Yes. All right. And then as a result of the inspection, Sesspool concludes the pipes connecting the two drywalls had collapsed. That's paragraph 21.  So they knew from Sesspool that it was collapsed. But a collapsed drywall does not necessarily denote coverage, denotes a loss that's covered by a policy of insurance. Right. If I may add to what my colleague is saying, is there – where – does the notice provision have to, in your mind, trigger only when they know exactly the who, what, when, where, why, and how? Or is it rather something a bit more abstract, like when there's a possibility or a reasonable possibility that the policy might be invoked? So it depends. If you look at, like, the liability cases and there are some of the cases that the defendant cited where there is an injury on a piece – on a premises or they received the complaint and they don't forward it to the carrier, there's really no excuse. Or in some of the property cases where the insured is waiting for – to see if a third party is going to pay them or the police is going to recover the jewelry in another case, yeah, then there's no basis to delay. But when the loss itself, the nature of the loss itself is hidden and there needs to be an investigation, then affidavits with respect to the finding of the experts are what are supposed to be considered. Okay. So can you do me a favor and tell me which case you think best stands for the proposition that you need to know with a pretty decent amount of specificity what you're calling the nature of the loss and what was responsible before informing the insurance company? What case do you think best stands for that kind of specificity? I think two. I think the Montefiore case and the T-Tex case. The Montefiore case, there was a brick façade assessment in May of 2000 – excuse me, in 1998. There was an expert report in August of 1998. There was a further scope analysis in September of 1998. And notice was given in October of 1998. Based on dueling affidavits on the summary judgment stage, not motion to dismiss, the court held their issues a fact. We didn't even have an opportunity to submit affidavits. Okay. We'll hear from you on rebuttal. Thank you. Thank you very much. Good morning, Your Honors. Good morning. I think that the issue here is one of a pleading issue that's – and maybe a misconception of the standard. The facts that were pleaded – first of all, I really just will rely on the papers that we've already written because I don't think there's anything new here, so I don't want to take up too much of the court's time. But there – as Judge Irizarry mentioned in the order, there are four distinct points in time where the insured should have notified the insurance company of the loss. If plaintiff, appellant, had pled the case as follows – plaintiff had a loss, water backup. Plaintiff submitted a claim. Insurance company denied the claim. We wouldn't be here. That's not enough at a motion-to-dismiss level to dismiss the complaint. Because plaintiff pleaded so specifically and listed the dates, which we have no issue with, there is no factual issue as to when – as to what happened on those dates. Well, at that point, then it becomes an issue where we almost have no choice but to move for a motion to dismiss. So that fact is on – all those facts are undisputed. The other issue that was just discussed about – when you did disclaim, I mean you didn't specifically mention that you weren't given reasonable notice. You actually – actually what your expert did was agree with their expert as to the cause and then said because of that cause, there's no coverage. Right. So then how does the notice have anything – how are you injured by getting the notice you got? You were able to determine that there wasn't coverage because you adopted what their expert said as to how it occurred. How does the notice become relevant? Well, so the – we did cite the notice provision in the denial letter. I'm pretty sure of that. But also, I think that's the point that we're – You said that you were sure of that. I believe – Can you tell me the page that you cited that? Let me look. I have to look that up. I think it's on the – Denial starts at 175. You're denial of coverage. Oh, I'm sorry. Now, I'll tell you – I give you that at 176, your expert says he was unable to – H2M was unable to identify the cause of pipe collapse because the pipes had been repaired prior to our involvement based on lack of information provided by the contractor. But then it goes on and says pipe blockage and collapse are typically found in the aging system. So the fact that the system was installed recently would tend to reflect an installation of a manufacturing defect to the pipe. And General H2M concurs with Sesspool's findings that a blocked pipe caused the backup. Then it says based on the review of that, the damages, the things that you claim for coverage or for reimbursement aren't covered. Right. Right? Yes. Correct. So I don't understand. This is about coverage. This isn't about causation.  Well, those kind of go hand-in-hand whether – because you have to know what the cause is. They made a claim for like cracked pavers and other things. You're saying it's not covered. Right. That's correct. You don't need to know the cause of that. You need to know – you just say, I'm sorry, broken window, no coverage. Tree damage, no coverage. Tree hits the house. I had a house. I had an ice store. Tree hits the house, tree covered. Well, no, I don't agree with that. The insurance company does have to know that. That's my policy and the insurance company pays. But in any event, I mean I don't understand the connection between your injury, your entitlement to reasonable notice, and your conclusion. You made a – you didn't say you couldn't conclude what caused it. You said we accept what they said about how it caused. But if it does matter, you're not covered. Right. Right. Well, there's a lot of things going on there with everything you just said. So you're entitled to reasonable notice even though notice has nothing to do with knowing whether there is or is not coverage. Well, that's correct because notice is a provision under the policy. That's your position? Yes. Okay. And to your point, though, in the denial letter there is a citation to the property conditions including notification. And then, of course, at the end it does say – What page is that? That is on page – I'm looking at document 174, which is exhibit two of that. And it's on page 181 of 287 of that docket entry. Okay. And the insurance company reserves its right to deny it on other grounds at the end of that as well. But the point I was trying to make was that there is no requirement and there is no case law in anywhere where the – in fact, having done this property insurance work for 20 years, it usually is used against the insurance company that we don't have to show the cause of the damage. It's a property policy. We say, hey, we got damage. Cover it. And then it's up to the insurance company to inspect the loss, investigate it. If they have a question about whether there's coverage, what caused the damage and whether it falls within exclusion, then they inspect it and they hire an expert or whatever they do to determine it. But the point is insurance do not have to show what the cause of the damage was. They just have to say, I have damage. Then it's up to the insurance company to do that. Here they had several opportunities to do that as pled in the complaint and didn't do it at any of those junctures. Can you respond to the fact that – what your colleague said about the Montefiore case? How do we distinguish it? What does it stand for? The Montefiore case – hold on one second. Let me just get to that. In Montefiore, I believe they were waiting for a second opinion. So the investigation wasn't complete. Here the investigation is totally complete and repairs are done. So Montefiore – But that's different than the earlier proposition you meant, which we could decide on the basis of the complaint, right? I mean, how the – you have been arguing that on the basis of the complaint, they give us the dates. Right. He is arguing, as I understand his argument, and he'll tell me if I'm wrong on rebuttal. They have a lot of things that can extend the process, including investigating to know what caused the issue. So is that a misreading? What is the standard? How would you respond to the fact that he argues that there is precedent that we need to look at that does not require an immediate triggering of notice just because they know the policy might be wrong? Oh, I don't – well, I don't think we would argue that there is some requirement that you immediately run to the – I know he said this several times, that you immediately run to the insurance company anytime you have a scratch on something. I mean, that's not – the question is an objective standard of reasonable – of when would a person reasonably see that there's a possibility of a claim? That's the standard. Now, there's – you could have a reasonable excuse for why you did not do that, and I think that's where the Montefiore case comes in and the idea is that, well, there's – we had to do this investigation to figure this out. They already did it and completed it. So Montefiore is really not relevant to the standard at all. I don't see how Montefiore is really relevant to the standard at all. Well, he's saying that they did the investigation and that his time should start after the investigation. So you need to do a little bit more work to see if he was – But even if he was – well, so even if he was – even if that's the case, even if you accept that to be the case, here it's already past that standard. Like, even if you took Montefiore as the standard, he's already way past Montefiore. So I think you could come up with a million different ways of looking at that and probably other cases where there's – things have happened and they're doing an investigation or you need a report or something like that. In this case, even if you accept that's the standard, it's way past that. So I don't think – I just think it doesn't really matter for this program. The last time that they pled was 16 days. Is that per se unreasonable? I think – well, I mean, it's not really – that's not really the standard, right? It's objective, right? Objectively speaking, did you see the reasonable possibility of a claim? That's the real standard. So it's not the time necessarily. It could be a year. It could be 16 weeks, 16 days. It doesn't really matter. So in this case, I would say that's not really – you just have to look at what would any objective person look at? And I think any one objective of all of us here in this room, if you had a water backup, even if that wasn't the time, let's say, okay, that's not the time. Forget it. I don't want to bother the insurance company with a frivolous claim. Okay, fine. Then I'm going to go hire an expert to go look at this and see what's wrong with it. The expert comes out and says, okay, I looked at it. Here's what's wrong with it. I'm still not going to bother the insurance company. I'm going to repair it. I'm going to excavate and I'm going to repair it, and then we'll see what happens. Okay, I'm going to do that now. All right, now that's done. Well, I'm going to take like 16 more days to analyze the effects. I mean, if you, and I think that the court said it, the district court said it perfectly, which is that when an insurance policy provision requires losses to be reported as soon as practicable or as here, as soon as possible, and the insured indefinitely reserves to itself the determination of whether a particular loss falls within the scope of coverage, it does so at its own risk. You have to report. That's the purpose. It is to protect an insurance company. It's in the policy, and it's in the law to allow them to go and investigate a loss. That's really all I have. Happy to answer any further questions. Okay. Thank you, Your Honor. Of course, the counsel doesn't really differentiate a Montefiore that has a timeline where you could argue why, when you got the expert report, did you give notice? Why, when you got the scope, did you not give notice? Why didn't you have to wait for the mortgagee to take a look at it before you gave notice? Those would all be questions, and based upon defendant's position, the case should have been dismissed on summary judgment, irrespective. Of course, we don't have summary judgment. When did your client know what the cause of the flooding was? So they knew that there was a collapse of the cesspool. That's the cesspool report, right? That's the cesspool report.  So once they knew that, why don't they have an obligation to notify? Because even when they knew that the cesspool collapsed, it was based on an internal camera that was put in, and they couldn't know what was around it or what caused it. I want to go back to the provisions, the conditions in the policy, which, Your Honor, you made reference to. It's actually on A-162, is the property conditions. And in addition to the notification, which says you must notify us or your agent of your loss as soon as possible, it also has a provision that's set under proof of loss. And it says you must submit to us within 60 days after we request your signed, sworn proof of loss, which documents to the best of your knowledge and belief the time and cause of loss, interest of the insured, other insurance, changes in title, specifications of any damaged buildings or estimates for the repair, et cetera. So it's not merely, as counsel would say, all I had to do was say, you know, I had a loss and you didn't pay me. And in essence that provision is 60 days after request. So the way it works is the insured notifies Chubb, and then at some point Chubb says send us some more documentations, and that triggers the 60-day provision. But on that same page, it says if you have a loss this policy may cover, you must perform these duties, including giving notice as soon as possible. When did they have an idea that the policy may cover the loss? I think after they got the excavation report from the people who actually dug it up and saw everything around it in terms of what the cause of the loss was. And that was the same in Montefiore. And if we go back to paragraph 21 that Judge Wesley pointed out, the cesspools inspection verified that pipes connecting two of the drywalls had collapsed, causing drywall number one to overflow. At that point, didn't they know that there may be a loss covered by the policy? No, not necessarily. You say not necessarily, but the language is that it may cover. What I'm saying in this instance, because the loss couldn't be seen until after the excavation. You only had a camera. But that's the weird thing. See, I'll give you that. It would have been a simple thing to simply have the insurance companies, adjusters, come and see what you saw. That's what the purpose of the notice is. That's where this thing trips me up with you, is that you say, well, wait until it's easy to be seen. Where was the insurance adjuster? Not there, was he? No, but as you point out.  Because obviously we hadn't given notice. You just told Judge Shin that that was the time to know what the nature of the loss was. Didn't you? You're talking about after. Now we're talking about after the excavation. No, you told them after you covered it back up. Well, because once they excavate, it's a process. You excavate and repair. You don't excavate, stop, call the insurance company, and then repair. Part of the conditions also that I just read from says that you must take all reasonable means that are necessary to protect property from further loss or damage. You start excavating and then you stop. You're doing exactly that. The point to all of this is all of this could have been hashed out in a summary judgment format with affidavits. I had no due process. I had a complaint. I had an attack on a complaint. I had documents as part of that motion that should not have been part of. And I have a district court that basically says that I didn't provide a sufficient application, explanation, which in essence basically says my pleading under Rule 8 had to come forward with that. And that's not what Rule 8 says. Okay. Thank you so much. Thank you. We'll take it under advisement. Thank you.